# IN THE DISTRICT COURT IN AND FOR OKLAHOMA COUNTY
## STATE OF OKLAHOMA

| | |
|---|---|
| VICKEY SCOTT, as Personal Representative of the Estate of DERRICK SCOTT, Deceased, | ) ) ) ) ) |
| Plaintiff, | ) ) ) |
| vs. | ) Case No.: ) ) |
| CITY OF OKLAHOMA CITY, JARRED TIPTON, ASHLEY COPELAND, and JENNIFER TITUS, | ) JURY TRIAL DEMANDED ) ) ) ATTORNEY'S LIEN CLAIMED ) |
| Defendants. | ) ) |

CJ 2022 3122

FILED IN DISTRICT COURT
OKLAHOMA COUNTY

JUL -1 2022

RICK WARREN
COURT CLERK

## PETITION

**COMES NOW**, the Plaintiff, Vickey Scott as Personal Representative of the Estate of Derrick Scott ("Mr. Scott"), Deceased, and for her Petition against the above-named Defendants, states and alleges as follows:

### PARTIES

1. Plaintiff Vickey Scott ("Plaintiff") is an individual and a resident of Oklahoma County, Oklahoma. Plaintiff is the duly-appointed Personal Representative of the Mr. Scott's Estate, who died on May 20, 2019.[1] Plaintiff is also Mr. Scott's surviving mother.

2. Defendant City of Oklahoma City is a municipal corporation and political subdivision of the State of Oklahoma, that was, at all times pertinent hereto, the employer

---

[1] Plaintiff filed her initial Petition on May 20, 2021. *See* CJ-2021-2202. The case was later removed to the United States District Court for the Western District of Oklahoma. Plaintiff and Defendants filed their Joint Stipulation of Dismissal Without Prejudice on June 14, 2022. Plaintiff is timely refiling this Petition pursuant to Oklahoma's Savings Statute, 12 Okla. Stat. § 100.

1

**EXHIBIT**

1

of the individual Defendants, Defendants Jarred Tipton, Ashley Copeland and Jennifer Titus. In addition, the City is and was at all times relevant to this Petition responsible for the policies, practices, and customs of the Oklahoma City Police Department ("OCPD"), and the training, supervision and discipline of OCPD officers.

3. Defendant Jarred Tipton ("Officer Tipton" or "Tipton") is a resident of Oklahoma City County, State of Oklahoma. Tipton was, at all times relevant hereto, acting under color of state law, and in the scope of his employment as an employee and/or agent of the City of Oklahoma City/OCPD.

4. Defendant Ashley Copeland ("Officer Copeland" or "Copeland") is a resident of Oklahoma City County, State of Oklahoma. Copeland was, at all times relevant hereto, acting under color of state law, and in the scope of her employment, as an employee and/or agent of the City of Oklahoma City/OCPD.

5. Defendant Jennifer Titus ("Officer Titus" or "Titus") is a resident of Oklahoma City County, State of Oklahoma. Titus was, at all times relevant hereto, acting under color of state law, and in the scope of her employment, as an employee and/or agent of the City of Oklahoma City/OCPD.

## JURISDICTION AND VENUE

6. Jurisdiction and venue are proper in this Court.

## FACTUAL BACKGROUND

### ■ Facts Specific to Mr. Scott

7. Mr. Scott was an African American male. He was 42-years-old at the time of his death.

8. On May 20, 2019, Mr. Scott was arrested by Defendants Tipton, Copeland and Titus (hereinafter collectively referred to as the "Defendant Officers").

9. Mr. Scott did not survive this encounter.

10. The Medical Examiner's report lists Mr. Scott's probable cause of death as a collapsed right lung, and cites physical restraint as a contributing factor.

11. "Body cam" video shows Officer Tipton initially confronting Mr. Scott in a parking lot. After a brief pursuit on foot, Officer Tipton tackled Mr. Scott, and brought him down to the ground.

12. After being tackled, Mr. Scott gasped, "I can't breathe." Officer Tipton callously replied, "I don't care."

13. As Officer Tipton straddled Mr. Scott's back with all of his weight, Mr. Scott repeatedly said, "I can't breathe."

14. Another officer, either Copeland or Titus, can be seen putting her knee into Mr. Scott's back.

15. Within a minute of being tackled, Mr. Scott was subdued, handcuffed and disarmed.

16. As Mr. Scott was completely subdued, not resisting and posing no threat to the Defendant Officers or anyone else, Officer Tipton and Copeland or Titus continued to hold Mr. Scott down with all their weight.

17. At around the 4-minute mark of the video, the Defendant Officers roll Mr. Scott over to his side. By this time, it was obvious that Mr. Scott was unresponsive and in emergent medical distress.

18. For a period of approximately 3 and ½ minutes, Mr. Scott laid motionless and unresponsive on the ground, in handcuffs, with both Officer Tipton and Copeland or Titus pinning him down with their knees. This was excessive and objectively unreasonable force.

19. Though Mr. Scott was clearly in serious and emergent need of medical assistance, none of the Defendant Officers did anything to assist Mr. Scott. They did not check his pulse or breathing and did not attempt CPR. The Defendant Officers did nothing for those 3 and ½ minutes, aside from pinning Mr. Scott down, while he was completely unresponsive and in distress. This constitutes deliberate indifference to a serious medical need.

20. At the 7:38 mark of the video, Copeland or Titus pokes Mr. Scott in the chest with a baton. Mr. Scott did not react or respond in any way. He is limp, unresponsive and lifeless. While this was another clear and obvious sign that Mr. Scott was in serious trouble and in extreme danger. None of the Defendant Officers did anything to assist Mr. Scott. No CPR was attempted. Rather, Officer Tipton and Copeland or Titus continued to pin Scott's lifeless body down on the ground. This was both excessive force and deliberate indifference to a serious medical need.

21. At around the 9:30 mark of the video, a paramedic arrives. By this time, Officer Tipton and Copeland or Titus have been pinning Mr. Scott down for approximately 6 minutes while he was handcuffed, subdued, unarmed, unresponsive and in obvious need of emergent medical attention (including CPR). This was both excessive force and deliberate indifference to a serious medical need.

22. At the 10:45 mark of the video, paramedics are able to somewhat revive Mr. Scott, but he is clearly disoriented, confused and in a state of distress.

23. Mr. Scott then convulses and begins screaming out in pain and agony. The Defendant Officers repeatedly tell Mr. Scott to "quit fighting," though it is obvious that he is experiencing substantial pain and is in a state of panic.

24. At the 11:40 mark of the video, Mr. Scott collapses and goes back into a state of unresponsiveness. Then, he continues to scream and moan in pain.

25. After several more minutes, Mr. Scott "coded." Attempts at resuscitation failed. Mr. Scott was dead.

26. The Defendant Officers' conduct toward Mr. Scott as described herein constitutes excessive and objectively unreasonable use of police force.

27. The Defendant Officers' conduct toward Mr. Scott as described herein further constitutes deliberate indifference to a serious medical need.

■ **Municipal Policies, Practices and/or Customs**

28. There is an affirmative link between the aforementioned excessive force and deliberate indifference to a medical need and policies, practices and/or customs which the City of Oklahoma City promulgated, created, implemented and/or possessed responsibility for.

29. On information and belief, the City of Oklahoma City/OCPD failed to adequately train and supervise its officers, including the Defendant Officers, with respect to, *inter alia*: the arrest of, and use of police force on, citizens who are subdued; the use of force continuum as it pertains to citizens who are subdued; the arrest of, and use of police

force on, citizens who are in medical distress; and the use of force continuum as it pertains to citizens who are in medical distress.

30. On information and belief, the City of Oklahoma City/OCPD failed to adequately train and supervise its officers, including the Defendant Officers, with respect to, *inter alia*: when to provide CPR to citizens in medical need; taking and understanding vital signs; and life-saving measures for citizens with emergent medical needs.

31. These policies and customs were "closely related" to the underlying violations of Mr. Scott's constitutional rights.

32. The City of Oklahoma City/OCPD knew, must have known or should have known that -- due its obviously inadequate training and supervision -- unconstitutional conduct toward arrestees/detainees by OCPD personnel was probable, but failed to take reasonable measure to alleviate the risks of harm.

## CAUSES OF ACTION

### CLAIM I
### EXCESSIVE USE OF FORCE
### (Fourth and/or Fourteenth Amendment; 42 U.S.C. § 1983)

33. Paragraphs 1-32 are incorporated herein by reference.

34. At the time of the complained of events, Mr. Scott, as a free person, had a clearly established constitutional right under the Fourth and/or Fourteenth Amendment to be secure in his person and free from objectively unreasonable seizure through excessive force to injure him and his bodily integrity.

35. Any reasonable officer knew or should have known of these rights at the time of the complained of conduct as they were clearly established at that time.

6

36.     In the totality of the circumstances, at the time that the police force described herein was used by Defendant Officers, Mr. Scott was: 1) unarmed; 2) not fleeing; 3) not resisting; 4) subdued; 5) unresponsive; and 6) posed no threat to himself, the Defendants, or anyone else.

37.     Moreover, Defendant Officers knew that Mr. Scott was particularly vulnerable as he continued to state he could not breath before falling into a state of motionlessness and unresponsiveness.

38.     The use of force by Defendant Tipton under the circumstances described herein was excessive and objectively unreasonable.

39.     The use of force by Defendant Copeland or Titus under the circumstances described herein was excessive and objectively unreasonable.

40.     Defendant Tipton applied objectively unreasonable and excessive physical force on Mr. Scott, thereby causing him physical and mental pain and anguish, and contributing to his death.

41.     Defendant Copeland or Titus applied objectively unreasonable and excessive physical force on Mr. Scott, thereby causing him physical and mental pain and anguish, and contributing to his death.

42.     As a direct proximate result of Defendants' unlawful conduct, Mr. Scott suffered actual physical injuries, mental and physical pain and suffering, death and other damages and losses as described herein entitling Plaintiff to recover compensatory and special damages in amounts to be determined at trial.

43. There is an affirmative link between the aforementioned excessive force and deliberate indifference to a medical need and policies, practices and/or customs which the City of Oklahoma City promulgated, created, implemented and/or possessed responsibility for.

44. On information and belief, the City of Oklahoma City/OCPD failed to adequately train and supervise its officers, including the Defendant Officers, with respect to, *inter alia*: the arrest of, and use of police force on, citizens who are subdued; the use of force continuum as it pertains to citizens who are subdued; the arrest of, and use of police force on, citizens who are in medical distress; and the use of force continuum as it pertains to citizens who are in medical distress.

45. These policies and customs were "closely related" to the underlying violations of Mr. Scott's constitutional rights.

46. The City of Oklahoma City/OCPD knew, must have known or should have known that -- due its obviously inadequate training and supervision -- unconstitutional conduct toward arrestees/detainees by OCPD personnel was probable, but failed to take reasonable measure to alleviate the risks of harm.

## CLAIM II
## DELIBERATE INDIFFERENCE TO A SERIOUS MEDICAL NEED
### (Fourteenth Amendment; 42 U.S.C. § 1983)

47. Paragraphs 1 through 46 are incorporated herein by reference.

48. The Fourteenth Amendment applies to an arrestee's claim of denial of medical care after his warrantless arrest and before he was taken to be booked into the county detention center. *See, e.g., Rife v. Okla. Dep't of Pub. Safety*, 854 F.3d 637, 641, 647

8

(10th Cir. 2017) (addressing arrestee's claim for denial of medical care following his arrest without a warrant).

49. To succeed on her Fourteenth Amendment claim, Plaintiff must show deliberate indifference to Mr. Scott's serious medical needs.

50. The Defendant Officers were deliberately indifferent to Mr. Scott's serious medical needs, as described *supra*.

51. It was obvious -- and otherwise known to the Defendant Officers -- that Mr. Scott was having difficulty breathing before falling into a state of motionlessness and unresponsiveness.

52. Still, for a period of at least 6 minutes, and likely more, the Defendant Officers completely disregarded the known and obvious risks to Mr. Scott's health and safety.

53. Indeed, Officers Tipton and Copeland or Titus only hastened Mr. Scott's pain, suffering and death by pinning him down with all their weight, for at least 6 minutes, when Mr. Scott was in obvious need of emergent medical attention (including CPR).

54. This deliberate indifference to Mr. Scott's serious medical needs proximately caused him significant injuries, including a worsening of his condition, unnecessary and extreme physical, mental pain and anguish, and death.

55. There is an affirmative link between the aforementioned deliberate indifference and policies, practices and/or customs which the City of Oklahoma City promulgated, created, implemented and/or possessed responsibility for.

56. On information and belief, the City of Oklahoma City/OCPD failed to adequately train and supervise its officers, including the Defendant Officers, with respect to, *inter alia*: when to provide CPR to citizens in medical need; taking and understanding vital signs; and life-saving measures for citizens with emergent medical needs.

57. These policies and customs were "closely related" to the underlying violations of Mr. Scott's constitutional rights.

58. The City of Oklahoma City/OCPD knew, must have known or should have known that -- due its obviously inadequate training and supervision -- unconstitutional conduct toward arrestees/detainees by OCPD personnel was probable, but failed to take reasonable measure to alleviate the risks of harm.

## PRAYER FOR RELIEF

WHEREFORE, based on the foregoing, Plaintiff prays this Court grant her the relief sought, including but not limited to actual and compensatory damages in excess of Seventy-Five Thousand Dollars ($75,000.00), with interest accruing from the date of filing suit, the costs of bringing this action, a reasonable attorneys' fee, along with such other relief as is deemed just and equitable. Plaintiff also seeks punitive damages against the Defendant Officers as their conduct constitutes callous or reckless indifference to Mr. Scott's rights.

Respectfully submitted,

Daniel E. Smolen, OBA #19943
Robert M. Blakemore, OBA #18656
Bryon D. Helm, OBA #33003

SMOLEN & ROYTMAN
701 South Cincinnati Ave.
Tulsa, Oklahoma 74119
P: (918) 585-2667
F: (918) 585-2669

***Attorneys for Plaintiff***